## Wheeler's Estate.

*Widow's election—Revocation of—Knowledge of estate requisite to valid election.*

Where a widow elects to take under her husband's will without full and adequate knowledge of his estate, its character, value and the debts against it, such election will be set aside upon her application.

Petition for leave to revoke widow's election. O. C. Allegheny Co., June T., 1921, No. 459.

*W. E. Schoyer* and *C. D. Scully*, for petitioner.

*A. A. Morris*, for respondent.

MITCHELL, J., Nov. 3, 1921.—This is the petition of Harriett H. Wheeler for leave to revoke her election to take under the will of her husband and to file another election to take against the will. The answer of the Commonwealth Trust Company of Pittsburgh, co-executor under decedent's will, admits the facts of the petition.

E. S. Wheeler, a resident of this county, died in Pasadena, California, Aug. 3, 1920, testate, leaving his widow and one child, Mary Elizabeth Wheeler, of the age of sixteen years. The petitioner and the Commonwealth Trust Company of Pittsburgh are the executors under the will.

Mr. Wheeler had been ill for several years prior to his death. His wife ministered to him during his sickness, and, as a result of her care and nursing, at the time of his death and when she signed her election to take under the will she was worn physically and mentally.

Mrs. Wheeler arrived in Pittsburgh from California about three weeks after her husband's death, and had a number of conferences with one of the trust officers of the Commonwealth Trust Company, her co-executor. During these conferences the matter of the widow's election to take under or against the will was discussed. This trust officer was friendly to Mrs. Wheeler and willing to assist her in arriving at a decision. He gave her what information he had at that early date concerning the estate, but this was not full enough to give an adequate idea of its value. She did not know the value of the estate or the indebtedness of the estate. The estimate given the widow at this time was that the gross estate amounted to from $200,000 to $250,000. The trust

officer informed Mrs. Wheeler that the debts had not been ascertained, but he did tell her of the indebtedness of the decedent on his note held by the Commonwealth Trust Company. The amount of this debt was said to be $30,000, and was the only obligation of the estate of which the co-executor knew definitely. It is now known that there are additional debts of the decedent represented by promissory notes of over $29,000; the Federal and State inheritance taxes, amounting to about $6500, are unpaid. In the account of the executors, filed but not audited, credit is taken for the payment of other debts and administration expenses of over $12,000. The amount of the debts and administration expenses at this time and prior to the audit is, therefore, upwards of $77,000.

In order that the executors might be guided in the administration of the estate, the trust officer urged Mrs. Wheeler to make her decision and file her election before she returned to California, which it was understood would be in about two weeks or a little more after her arrival in Pittsburgh. He suggested that she take time and advice before making her decision, and even advised her to "break the will." Mrs. Wheeler was quite undecided, and, as she said, almost sick over the matter. While it was not intended to force a hasty or inconsiderate decision, yet Mrs. Wheeler received the impression that it was necessary for her to make her decision at that time. She talked over the subject with the trust officer several times and with her sister-in-law and had difficulty in coming to a conclusion. She did not have sufficient facts as to the character and value of the estate to make an intelligent election. In this the present case differs from Johnson's Estate, 244 Pa. 600.

The petitioner filed her election before she returned to California, but it is uncertain as to the exact date when the election was made. The election bears date of Aug. 26, 1920. The certificate of the notary public of the acknowledgment and the certificate of the Commonwealth Trust Company of Pittsburgh of the delivery to it by the widow of the election bear the same date. It was recorded on Sept. 8, 1920. The testimony indicates that it was delivered sometime between the date it bears and the date of the record, and nearer to the latter date.

As soon as Mrs. Wheeler returned to California she regretted the election she had made and took steps to have it revoked. The inventory and appraisement of the personal property had not been prepared at the time the election was made, but a copy of it was sent to Mrs. Wheeler after her return to California. No further information as to the debts of the estate was given, and it is likely the co-executor did not then know of the indebtedness as it now appears.

The widow is entitled to her right here, and the law favors her availing herself of it if she so elects. She is given ample time in which to make her decision. She is also entitled to know the character of the estate, the value of the property, and the debts to be paid out of the estate, in order that she may act intelligently. From the facts as they appear to us from the testimony, we believe Mrs. Wheeler did not have full and adequate knowledge of her husband's estate, and could not arrive at the value of it. The election was not made with that deliberation and consideration based on a full understanding of the value of the estate which the widow was supposed to have. The urgency on her for an early decision led her to make this election, which cannot be said to be her intelligent choice and should not stand. No rights of other parties have intervened.

The prayer of the petition is granted and it is ordered that the election heretofore made by the widow be revoked and set aside and she be permitted to file a new election.          From Edwin L. Mattern, Pittsburgh, Pa.